UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

DEMARCUS BRISTUAN FITZHUGH,

        Defendant.

Case No. 16-mj-30364

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
KANDIS A. WESTMORE

### OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO REVOKE THE ORDER OF RELEASE

**I.   INTRODUCTION**

On August 18, 2016, a United States Magistrate Judge in the Eastern District of Michigan issued a criminal complaint against Defendant Demarcus Bristuan Fitzhugh. The complaint charges Fitzhugh with three crimes involving the sexual exploitation of a minor.

Fitzhugh was taken into custody in the Northern District of California. On August 24, 2016, a United States Magistrate Judge in the Northern District of California released the Defendant on bond. This matter is currently before this Court on the Government's motion to revoke the order of release issued by the

1

California Magistrate Judge. This Court held an evidentiary hearing on August 31, 2016 in which both parties were represented.[1]

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. In this case, Section 3142(e) creates a presumption in favor of pretrial detention. In addition to that presumption, this Court considered the factors set forth in 18 U.S.C. § 3142(g) and concludes that the Defendant poses a danger to the community and also to himself. For the reasons set forth below, the Court GRANTS the Government's motion and revokes the Defendant's bond.

## II.   FACTUAL BACKGROUND

Demarcus Fitzhugh faces three charges: (1) Production of Child Pornography in violation of 18 U.S.C. § 2255; (2) Online Enticement and Coercion of a Minor in violation of 18 U.S.C. § 2422 (b); and (3) Receipt and/or Distribution of Child Pornography in violation of 18 U.S.C. § 2252A (a)(2). *See* Criminal Complaint, Aug. 18, 2016, ECF No. 1. The case against Fitzhugh involves four female minors. *Id.* ¶ 5(k). However, the facts leading to Fitzhugh's arrest mainly involve one female minor who resides in Michigan (hereinafter MV-1). *Id.*

In 2014, MV-1 began using a mobile messenger application called "Kik". *Id.* ¶5. MV-1 created a Kik group for artists. *Id.* ¶ 5(a). MV-1 met "Marcus Aurelius" online, when he joined MV-1's Kik group. *Id.* ¶ 5(b). "Marcus Aurelius" claimed

---

[1] Defendant was represented through counsel, Sanford A. Schulman.

2

to be a 22-year-old black male from California. *Id. ¶* 5(c). At the time, MV-1 was 14 years old. *Id. ¶* 5(d). According to the Complaint, on at least two occasions (once in July 2015, once in August 2015), "Marcus Aurelius" asked MV-1 to send him nude photographs of herself via private messages on Kik. *Id. ¶¶* 5(c), 5(d). On both occasions, MV-1 complied and sent nude photographs. *Id.*

In early November 2015, MV-1 received a text message from an unknown number. *Id. ¶* 5(h). The unknown messenger identified himself as "Michael" and claimed to go to MV-1's high school. *Id. ¶* 5(i). "Michael" wrote that he possessed nude photographs of MV-1, which made MV-1 believe that "Michael" was actually "Marcus Aurelius" from Kik. *Id.* "Michael" further suggested that he would distribute MV-1's nude photographs unless MV-1 sent him more photos. *Id.* Shortly after MV-1 received the text messages from "Michael", MV-1 and her mother reported the incident to the local police. *Id. ¶* 4.

In June 2016, police located 43 photographs of MV-1 on a foreign website. *Id. ¶¶* 9–10. Approximately ten of the 43 photographs were sexually explicit. *Id.* MV-1 verified that the images on the foreign website were the same photos that she sent "Marcus Aurelius" via Kik. *Id.* The photos were posted on November 9, 2015 by the user "MA12345". *Id.* "MA12345" also posted MV-1's name, city of residence and telephone number. *Id. ¶* 11. The FBI traced the user name "MA12345" to an email address and an IP address. *Id. ¶* 12. The email address

lead investigators to Fitzhugh's Facebook page. *Id.* ¶¶ 12–22. The IP address associated with "MA12345" resolved to Fitzhugh's home. *Id.* ¶¶ 15–18. The FBI also linked Fitzhugh's home IP address to the text messages that MV-1 received from "Michael". *Id.* ¶¶ 27–29.

On August 18, 2016, United States Magistrate Judge R. Steven Whalen, sitting in the Eastern District of Michigan, issued a Criminal Complaint against Fitzhugh. Fitzhugh was taken into custody in the Northern District of California. On August 24, 2016 United States Magistrate Judge Kandis A. Westmore, sitting in the Northern District of California, held a detention hearing. At the detention hearing, Fitzhugh's mother (hereinafter Ms. Burkette) proffered that since Fitzhugh was taken into custody she has arranged to work from home to supervise Fitzhugh. Detention Hr'g Tr. 25–27. Ms. Burkette disconnected the internet service in her home and forbids Fitzhugh to access any phone, tablet or computer. *Id.* Ms. Burkette also forbids Fitzhugh from leaving her presence even to go to school or to Fitzhugh's job. *Id.* at 26. Ms. Burkette voluntarily committed herself to be Fitzhugh's legal custodian; she signed an unsecured bond on Fitzhugh's behalf and scheduled Fitzhugh's psychological evaluation. *Id.* at 34–44.

Based on Ms. Burkette's commitment as a custodian and a surety, Magistrate Judge Kandis A. Westmore granted Fitzhugh's release on a $50,000 unsecured bond. *Id.* The Northern District of California division of the United

States Attorney's Office requested a 24 hour stay Magistrate Judge Westmore's release order. During the stay, the Eastern District of Michigan division of the United States Attorney's Office filed a timely appeal in the Eastern District of Michigan.

### III. JURISDICTION & STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3145(a) "If a person is ordered released by a magistrate judge…the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." When a defendant is arrested in one federal district but charged in another federal district, original jurisdiction lies with the court where the complaint or indictment is pending. *United States v. Johnson*, 103 F.3d 131 (6th Cir. 1996).

In this case, although the Northern District of California conducted the initial detention hearing, the Criminal Complaint was issued in the Eastern District of Michigan. Therefore, this Court has original jurisdiction and thus jurisdiction to review the California Magistrate's Release Order.

Although not yet dispositively addressed by the Sixth Circuit, it is well-settled that district courts exercise *de novo* review of a magistrate judge's release or detention order. *See U.S. v. Leon*, 766 F.2d 77 (2d Cir.1985); *see also U.S. v. Koubriti*, 2001 WL 1525270 (E.D.Mich.2001), *United States v. Fata*, No. CRIM.

13-30484, 2013 WL 4084765, at *5 (E.D. Mich. Aug. 13, 2013). "The Court may also consider the record developed before the magistrate in making its determination." *See United States v. Chambers*, 1988 U.S. Dist. LEXIS 18197, *2 (E.D. Mich. Apr. 22, 1988).

### IV.   LEGAL STANDARDS

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial only if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The default position of the law is to release the defendant pending trial. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, 18 U.S.C. § 3142(e) reverses that default position for certain, particularly dangerous defendants. *Id.* Federal law creates a rebuttable presumption in favor of detention when a judge finds probable cause to believe that a defendant committed one of the crimes listed in 18 U.S.C. § 3142(e)(3).

Section 3142(e)(3)'s presumption in favor of detention imposes a burden of production on the defendant. *See Stone*, 608 F.3d 939, 945. The defendant's burden of production is not heavy. *Id.* But, the defendant must produce evidence to rebut the statutory presumption in favor of detention. *Id.* Even when a defendant satisfies the burden of production, "the presumption favoring detention does not disappear."

*Id.* Instead, the presumption favoring detention remains as a factor to be considered among those weighed by the district court." *Id.*

In addition to weighing the effect of a statutory presumption in favor of detention, the Court shall also consider the following factors:

> "(1) the nature and circumstances of the offense charged, including whether the offense … involves a minor victim …;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including-
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release …."

18 U.S.C. § 3142(g).

The Government maintains the burden of persuasion. The Government must prove risk of flight by a preponderance of the evidence and dangerousness to the community by clear and convincing evidence. 18 U.S.C. § 3142(f).

Therefore, if this Court considers the evidence in light of the § 3142(g) factors and finds that the Defendant is a flight risk or poses a danger to the

7

community, this Court may revoke the Magistrate's Release Order and order the Defendant be detained pending trial.

## V.     Analysis

The Criminal Complaint charged the Defendant with three offenses related to the sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a), 2422(b), and 2252A(a)(2). *See* ECF No. 1. Each of the Defendant's offenses is specifically mentioned in 18 U.S.C. § 3142(e)(3), which creates a presumption in favor of detention.[2]

United States Magistrate Judge R. Steven Whalen signed the criminal complaint based on a finding of probable cause that the Defendant engaged in the alleged conduct. This Court agrees with Judge Whalen's determination of probable cause. Therefore, in this case, the statutory presumption favors detention of the Defendant. As a result, the Defendant bears the burden of production to rebut the presumption against him.

---

[2] "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed
. . . .
 **(E)** an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, **2251**, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), **2252A(a)(2)**, 2252A(a)(3), 2252A(a)(4), 2260, 2421, **2422**, 2423, or 2425 of this title."

18 U.S.C. § 3142(e)(3) (emphasis added).

The Defendant has not met his burden of production. The Defendant provided evidence to rebut the presumption that he is dangerous and a flight risk. At the Detention Hearing, the Defendant's mother explained in detail the steps she will implement to supervise the Defendant. Those steps include: removing all internet and electronics from the home, agreeing to work from home to act as the Defendant's legal custodian, forbidding the Defendant from going to college or work, and requiring that the Defendant remain under her immediate supervision at all times.

Although the Defendant attempted to satisfy his burden of production, the presumption in favor of detention remains a factor that the Court considers in conjunction with the other factors listed in Section 3142(g). The Government's Motion to Revoke the Order of Release focuses on the dangerousness of the Defendant and not whether the Defendant is a flight risk. As a result, this Court will review each Section 3142(g) factor as it pertains to the Defendant's danger to the public.

### A. 18 U.S.C. § 3142(g) Factors

Analysis of each of the Section 3142(g) factors weighs in favor of detention, rather than release.

*1. The Nature and Circumstances of the Offense Charged*

California Magistrate Judge Kandis A. Westmore found that the "nature of the offense[s] [are] very serious". Det. Hr'g Tr. 17, Aug. 24, 2016. This Court agrees. In addition to carrying a presumption of dangerousness due to the involvement of a minor, each of the Defendant's offenses carries a lengthy mandatory minimum sentence. Production of Child Pornography carries a minimum mandatory sentence of 15 years. 18 U.S.C. § 2251(e). Online Enticement and Coercion of Minor carries a mandatory minimum of 10 years. 18 U.S.C. § 2422(b). And, Receipt and/or Distribution of Child Pornography can carry a mandatory minimum of 5 years. 18 U.S.C. § 2252A(b)(1).

Mandatory minimum sentences limit judicial discretion as a matter of federal law. The legislative history of 18 U.S.C. §§ 2422, 2251 and 2252 illustrates that Congress intended to impose lengthy mandatory-minimum sentences in child sexual abuse cases to demonstrate the danger that such offenses present to children.[3] Therefore, these mandatory sentences reflect a Congressional

---

[3] In Considering the PROTECT ACT of 2003, the House Conference Report discussed:
> "**The increased mandatory minimum sentences are responsive to real problems of excessive leniency in sentencing under existing law.** For example, the offenses under chapter 117 of title 18, United States Code, apply in sexual abuse cases involving interstate movement of persons or use of interstate instrumentalities, such as luring of child victims through the Internet. Courts all too frequently impose sentences more lenient than those prescribed by the sentencing guidelines in cases under chapter 117, particularly in situations where an undercover agent rather than a child was the object of the enticement. Yet the offender's conduct in such a case reflects a real attempt to engage in sexual abuse of a child, and **the fact that the target of the effort turned out to be an undercover officer has no bearing on the culpability of the offender, or on the**

determination that individuals who sexually exploit minors are inherently dangerous. This Court agrees with Congress's determination and finds that the nature and circumstances of the Defendant's charges favor detention.

### 2. *The Weight of the Evidence Against the Person.*

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Evidence of the Defendant's dangerousness is heavy.

*Just one* sexually-related offense against *just one* minor is enough to imply dangerousness. Magistrate Judge Whalen found, and this Court agrees, that there is probable cause to believe that the Defendant engaged in not *just one*, but three separate offenses of sexual exploitation of a then-14-year-old-girl. Further, the Government proffered that this case doesn't involve *just one* minor. The Government's case against the Defendant already involves four minors. And "[it] is likely that additional victims will be identified and located as the investigation of Fitzhugh continues." *See* Gov.'s Mot. to Revoke Order of Release, ECF No. 9, at

---

**danger he presents to children if not adequately restrained and deterred by criminal punishment**."

H.R.Rep. No. 108-66 (emphasis added).

The PROTECT ACT of 2003 became Public Law No: 108-21. Public Law No: 108-21 established the current mandatory minimum sentences for violations of 18 U.S.C. §§ 2251(a), 2422(b), and 2252A(a)(2).

3. Due to the three, distinct sexual exploitation charges and the numerous potential minor victims, evidence of the Defendant's dangerousness favors detention.

### 3. The History and Characteristics of the Person

It is undisputed that the Defendant has no prior criminal history. The gravamen of the third factor reduces to weighing the Defendant's family ties against his mental condition.

The Defendant currently resides with his mother, Ms. Burkette. Ms. Burkette seems to be strong family support. Since these charges, Ms. Burkette now works from home to constantly supervise the Defendant. She disconnected the internet in her home, scheduled the Defendant's psychological evaluation, signed the unsecured bond on the Defendant's behalf, and agreed to be the Defendant's legal custodian.

On the other hand, the Defendant's mental condition concerns the Court. The Defendant currently takes medication to treat Asperger's Syndrome and Attention-Deficit/Hyperactivity Disorder (ADHD). In addition to the Defendant's conditions he suffers bouts of anger and depression. The Defendant reported three suicidal ideations: one at age 16, one at age 20 which contemplated a desire to be

killed by police, and another three hours prior to the Defendant's detention hearing. In light of the Defendant's mental health status, the Pretrial Services Officer recommended that the Defendant be detained pending further evaluation. Notwithstanding the mitigating effect of Ms. Burkette's involvement and the Defendant's lack of a criminal history, the Defendant's suicidal history and unstable mental health make him a danger to himself. Therefore, the Defendant's history and character favors detention rather than release.

### 4.     *The Nature and Seriousness of the Danger to any Person*

The evidence proffered at the detention hearing tended to show that the Defendant posed as a classmate of MV-1 and threatened to distribute her nude photos unless MV-1 sent more photos. Police later linked the Defendant to a user on a foreign website that posted 43 photos of MV-1. Not only were some of the photos sexually explicit, the user published MV-1's name, city of residence, and phone number. Despite the best efforts of the Federal Bureau of Investigation and the United States Attorney's Office, the Government has been unsuccessful at removing the MV-1's photos from the internet. The Government admits that there is no perfect claw-back mechanism for child pornography once it is distributed. Therefore, even if the images of MV-1 are eventually removed, some damage to MV-1 cannot be undone.

Even more disturbing to the Court is evidence which shows that the Defendant stores child pornography in cloud-based accounts like Dropbox. These cloud-based accounts allow wireless users to access photos, documents and contacts across multiple platforms. Therefore, any internet-capable device could confer access to Defendant's accounts.

Ms. Burkette's efforts to eliminate internet and remove internet-capable technology from her home are impressive. However, wireless networks are ubiquitous and internet-capable devices are easy to obtain. Ms. Burkette simply cannot guarantee that the Defendant will not be able to access the internet and further distribute images.

The Court remains concerned for the damage that MV-1 continues to suffer. But the Court is especially concerned for the danger to the yet unknown minors whose photographs could be perpetually preserved in the Defendant's accounts. In light of the Defendant's past behavior, the pervasiveness of wireless internet, and the immeasurable harm to child porn victims, this Court finds that danger to the unknown minors favors detention of the Defendant.

### VI. CONCLUSION AND ORDER

After analysis of each of the Section 3142(g) factors, the Court finds no condition or combination of conditions that would reasonably assure that Fitzhugh would not post a danger to the community. Accordingly, Fitzhugh shall be

detained pending trial and the Government's motion to revoke the Order of Release is GRANTED.

SO ORDERED.

DATED: SEPTEMBER 12, 2016                    S/GERSHWIN A. DRAIN
                                             GERSHWIN A. DRAIN
                                             UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES THAT THE FOREGOING DOCUMENT WAS SERVED UPON COUNSEL OF RECORD AND ANY UNREPRESENTED PARTIES VIA THE COURT'S ECF SYSTEM TO THEIR RESPECTIVE EMAIL OR FIRST CLASS U.S. MAIL ADDRESSES DISCLOSED ON THE NOTICE OF ELECTRONIC FILING ON SEPTEMBER 12, 2016.

                                             S/TERESA MCGOVERN
                                             TERESA MCGOVERN
                                             CASE MANAGER GENERALIST